**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
MANISHA SINGH,                                                      :
                                                                    :
                                          Plaintiff,               :
                                                                    :
         -against-                                                 :          MEMORANDUM DECISION
                                                                    :             AND ORDER
MEMORIAL SLOAN KETTERING CANCER                                    :
CENTER, DR. S.V. KISHORE PILLARSETTY,                              :          17 Civ. 3935 (GBD)
and MD STEVEN M. LARSON,                                           :
                                                                    :
                                          Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GEORGE B. DANIELS, District Judge:

Plaintiff Manisha Singh brought this harassment and retaliation action against Defendants

Memorial Sloan Kettering Cancer Center, Sloan Kettering Institute for Cancer Research, Dr. N.V.

Kishore Pillarsetty, and Dr. Steven M. Larson. (Amended Complaint ("Am. Compl.," ECF No.

38.) After certain of Plaintiff's claims were dismissed, (*see* ECF No. 67), trial proceeded against

all Defendants on Plaintiff's claims under Title VII of the Civil Rights Act of 1964, the New York

State Human Rights Law, the New York City Human Rights Law, and for civil battery under New

York State tort law. On July 21, 2022, a jury found Defendant Pillarsetty liable for battery and

awarded Plaintiff $50,000 in compensatory damages and $200,000 in punitive damages.

Before this Court is Plaintiff's post-trial motion pursuant to Rule 59 of the Federal Rules

of Civil Procedure for a new trial on the grounds that the damages awarded were contrary to the

evidence and inadequate. (ECF No. 233.) Plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff Manisha Singh was employed at Defendants Memorial Sloan Kettering Cancer

Center ("MSKCC") and Sloan Kettering Institute ("SKI") from approximately August 2014

through September or October 2016. (Am. Compl. ¶ 10.) She filed this action on May 23, 2017,

several months after her termination, alleging that Defendant Pillarsetty harassed and subjected her to unwanted sexual advances throughout her employment, including touching her body without her consent, and that he retaliated against her for rejecting his advances. (*Id.* ¶¶ 3, 5, 27.) Plaintiff also alleged that she reported such harassment "on multiple occasions to multiple employees of MSKCC/SKI," including Larson. (*Id.* ¶¶ 14, 19, 41.) Rather than address her concerns, Plaintiff alleged that Defendants unlawfully terminated her in retaliation for her complaints. (*Id.* ¶¶ 5, 61, 63.) Finally, Plaintiff alleged that "Defendants defamed [her] professional reputation by making or publishing false statements in references to [her] potential prospective employers." (*Id.* ¶ 6.)

In an amended complaint filed in June 2018, Plaintiff asserted claims of sexual harassment and retaliation against MSKCC and SKI under Title VII of the Civil Rights Act of 1964, and against all Defendants under the New York State Human Rights Law and the New York City Human Rights Law. (Am. Compl. ¶¶ 77–95.) She also raised claims of civil battery, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") against all defendants, and a claim of defamation *per se* against Defendants Pillarsetty and Larson. (*Id.* ¶¶ 96–122.) On December 20, 2019, this Court dismissed Plaintiff's NIED and defamation claims in their entirety, as well as her IIED and battery claims against Defendants MSKCC, SKI, and Larson. (ECF No. 67.) During trial, Plaintiff withdrew her IIED claim against Defendant Pillarsetty and proceeded on just her statutory claims against all Defendants, and her civil battery claim against Pillarsetty.

Trial began on July 12, 2022. Over a seven-day period, the jury heard testimony from Plaintiff, Defendants, and others on Plaintiff's harassment and battery allegations and the reasons for her termination. Plaintiff testified that, during the two-year period for which she worked for him, Pillarsetty would "hug[] [her] tightly, and [] place[] his hand on [her] back and grab[] [her]

buttock," (Transcript of Trial Proceedings ("Tr.") 873:19–23), "put his hands on [her] thighs, and sometimes [] put his hand on [her] hand and shoulder," (*id.* 880:22–24) and touch her buttocks and place his hand on her "stomach area" and slide "his hand towards [her] breast," (*id.* 957:13–18). Pillarsetty denied most of Plaintiff's allegations, admitting only to having placed his hands on Plaintiff's shoulders in a non-sexual way, and once hugging Plaintiff at a party in the presence of his wife. (*Id.* 604:25–605:4; 676:25–678:5.)  The jury also received significant testimony and documents regarding the emotional distress Plaintiff claimed to have suffered because of Pillarsetty's conduct, (*id.* 938:11–943:2), and after her termination, (*see e.g.*, *id.* at 975:2–11, 177:21–7, 1112:9–1113:1).  Plaintiff and Plaintiff's mental health providers also testified about Plaintiff's previous abusive marriage, eventual divorce, and the resulting alienation she experienced from her community in India. (*See e.g., id.* 175:12–13, 855:12.)  Plaintiff did not claim any physical injuries and sought damages only for her emotional distress.

On July 21, 2022, the jury returned a verdict in favor of Plaintiff on her battery claim against Pillarsetty.  The jury awarded Plaintiff $50,000 in compensatory damages and $200,000 in punitive damages.  The jury found for Defendants on all other claims.  On August 19, 2022, Plaintiff moved for a new trial on the theory that the compensatory damages award is inadequate as a matter of law and contrary to the weight of the credible evidence.  (ECF No. 233.)

## LEGAL STANDARD

A federal court, in reviewing the amount of damages awarded on a state law claim, must apply state law. *Gasperini v. Ctr. for the Humanities*, 518 U.S. 415, 430–31 (1996); *see also Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005).  New York law provides that a court "reviewing a money judgment ... in which it is contended that the award is excessive or inadequate ... shall determine that an award is excessive or inadequate if it deviates materially from what

would be reasonable compensation." N.Y. C.P.L.R. § 5501(c). To determine if a verdict materially deviates from reasonable compensation, "a district court reviews the evidence presented at trial in support of the challenged damage award and compares the award to other New York cases in which evidence of similar injuries was presented." *Presley v. U.S. Postal Serv.*, 317 F.3d 167, 173 (2d Cir. 2003).

Although New York's "materially deviates" standard gives less weight to the jury's conclusions than the federal "shocks-the-conscience" test, the jury's verdict still merits considerable deference. *See Nivar v. Sadler*, No. 13 Civ. 7141, 2016 WL 3647957, at *3 (S.D.N.Y. July 1, 2016) (citing *Gasperini*, 518 U.S. at 429); *see also Lolik v. Big v. Supermarkets, Inc.*, 698 N.Y.S.2d 762, 763 (3d Dep't 1999) ("[t]he assessment of damages in a personal injury action is primarily a factual determination to be made by the jury, and is accorded great deference"); *Levine v. E. Ramapo Cent. Sch. Dist.*, 597 N.Y.S.2d 239, 240 (3d Dep't 1993) ("considerable deference should be accorded to the interpretation of the evidence by the jury"). It is axiomatic that the "calculation of damages is the province of the jury" and "judicial interference with a matter that is otherwise within the jury's domain" is to be minimized. *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993) (citation omitted); *see also In re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831, 853–54 (2d Cir.1992) (citing *Zimmerman v. New York City Health & Hosps. Corp.,* 458 N.Y.S.2d 552, 555–56 (1st Dep't 1983)). The movant in such cases therefore faces a high burden, and must demonstrate that the preponderance of the evidence is so greatly contrary to the verdict that a jury could not have rendered it by any fair interpretation of the evidence. *Olszowy v. Norton Co.,* 553 N.Y.S.2d 224, 226 (3d Dep't 1990). Deference must be accorded the interpretation of the evidence by the jury as long as there is credible evidence sufficient to support that interpretation, even if other evidence exists in the record which would

support a contrary conclusion. *Simone v. Crans,* 891 F.Supp. 112, 112–13 (S.D.N.Y. 1994) (citation omitted).

## THE JURY'S AWARD WAS REASONABLE

In this case, the analysis of the evidence confirms that the award to Plaintiff was not unreasonably low. At the outset, although Plaintiff is right that the evidence regarding her emotional distress was significant, Plaintiff's motion ignores the significant fact that the jury reached a defense verdict on all claims except battery (*i.e.,* fourteen out of fifteen claims). In determining what constituted fair compensation then, the jury had to limit its award to compensation for the distress Plaintiff suffered as a direct result of *only* the battery. Assigning a dollar amount to emotional distress is an inherently subjective determination in any case, but particularly here where the evidence showed multiple stressors in Plaintiff's life that may have also caused or contributed to Plaintiff's emotional state. Plaintiff and her mental health providers attributed some of her distress, for example, to harassment the jury found did not occur and to her termination that the jury deemed lawful. Further complicating things, the jury may have additionally or alternatively determined that certain facets of Plaintiff's mental health condition stemmed from her prior abusive marriage—a topic on which Plaintiff brought forth considerable evidence at trial—rather than the battery. While the jury obviously concluded that Pillarsetty's physical touching was liable for some of Plaintiff's emotional distress, it may very well have also concluded that he was not responsible for all of it, and discounted her award accordingly.[1]

---

[1] Although Plaintiff is correct that her mental health professionals did attribute *certain* of her mental health issues to Pillarsetty's unwanted touching of Plaintiff, (Reply at 7–8), they did not testify that *none* of her mental health problems were caused by her abusive relationship or the loss of her employment. Plaintiff's suggestion to the contrary, (*id.* at 7), is notably unsupported. Even if they had so testified, the jury was free to discredit their testimony and assign some subset of Plaintiff's emotional and mental health issues to these other stressors about which they received significant evidence.

Plaintiff relies on two additional assumptions that may not be warranted. First, Plaintiff's motion discusses at length the symptoms she claims to have suffered as a result of Defendant Pillarsetty's conduct, including, among other things, panic attacks, decreased appetite, nightmares, severe depression and anxiety, suicidal thoughts, and repeated psychosomatic pain and numbness on the left side of her body. (*See e.g.*, Pl.'s Mem. of Law. in Supp. of her Mot. for Summ. J. ("Mot."), ECF No. 234, at 2.) The jury did not necessarily conclude that Plaintiff had actually experienced all of these symptoms. The evidence to support these claims consisted of Plaintiff's testimony and the testimony of Plaintiff's treating mental health professionals (from whom Defendants elicited testimony that they had based their diagnoses on Plaintiff's accounts of what she was experiencing)—and thus was uncorroborated. The jury was free to credit or discredit Plaintiff's claims as to the extent of her emotional distress, and may have rejected certain of her alleged symptoms as either unbelievable or not rationally tied to the battery.

Plaintiff also states, purportedly as an assertion of fact, that she "endured relentless, wanton, and malicious offensive touching by the defendant for more than two years." (Mot. at 29.) Again, while the jury may very well have agreed, it is equally plausible that they did not to the extent that Plaintiff testified. The jury was free to accept or reject any portion of Plaintiff's testimony, including as to the prevalence or repetitiveness of this conduct, for how long it occurred, and whether it was "relentless," "wanton," or "malicious." The jury may have, for example, credited Plaintiff's testimony that Pillarsetty placed his hand on her lower back or shoulders, but disbelieved Plaintiff when she said that he touched her buttocks or breasts, that he chased her around the laboratory at MSKCC, or that he touched her in public places in the presence of others. The jury may have also rejected Plaintiff's testimony that these acts occurred repeatedly across the full two-year period she worked at MSKCC and SKI. Indeed, the contrary defense verdicts on

Plaintiff's sexual harassment claims supports the conclusion that the jury may not have entirely credited Plaintiff's representations as to the scale of the unwanted touching or its habitual nature.[2] Indeed, the evidence of battery at trial—which consisted only of Plaintiff's testimony—was by no means so overwhelming as to require a compensatory damages award higher than that which Plaintiff received.  An award of $50,000 strikes a fair balance between the damages Plaintiff suffered and the near-complete absence of evidence to corroborate her claims.[3]

Consistent with the tenet that, "[i]n determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries," S*cala v. Moore McCormack Lines, Inc.,* 985 F.2d 680, 684 (2d Cir. 1993) (*quoting Nairn v. National R.R. Passenger Corp.,* 837 F.2d 565, 568 (2d Cir. 1988)), Plaintiff draws this Court's attention to a number of cases in which the jury awarded higher damages than those awarded here. (Mot. at 25–28.) Many of the cases that Plaintiff cites, however, are not battery cases and, significantly, involve

---

[2] In attempt to reconcile the verdicts on sexual harassment and battery, Plaintiff suggests that the jury reached a defense verdict on Plaintiff's harassment claims only because they found that Plaintiff had failed to prove the "*quid pro quo*" element of that claim. (*See* Pl.'s Reply Br. in Supp. of Mot., ECF No. 242, at 5.) That is indeed one explanation, but it is not only the one. It does not necessarily follow from the jury's battery verdict that they believed Plaintiff's every representation when it came to the degree or severity of the battery or the number of times it occurred. Plaintiff also ignores that her harassment claim under the New York City Human Rights Law did not have a *quid pro quo* element, which renders her preferred reconciliation theory less likely. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110-11 (2d Cir. 2013) (describing the lesser showing required by the NYCHRL as compared to Title VII and the NYSHRL).

[3] The cases upon which Plaintiff relies can be distinguished in that the plaintiffs therein suffered harassment at levels greater than that which Plaintiff may have been able to prove here. The situation in *Turley* was "unique" in its level of "grotesque psychological abuse" across a "multiyear period." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 150, 163 (2d Cir. 2014). Similarly, the *Mayo-Coleman* plaintiff was "repeatedly harassed," as often as "three to four times a month." *Mayo-Coleman v. Am. Sugar Holdings, Inc.*, No. 14-CV-79, 2018 WL 2684100, at *3 (S.D.N.Y. June 5, 2018). *Phillips* is particularly distinguishable in that it involved "ongoing harassment" by *multiple* defendants—not just one—"over a five-year period." *Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002). Here, While the jury in this case could have reached similar conclusions, it is equally reasonable they did not, and courts must uphold awards supported by any fair interpretation of the evidence. *See Simone,* 891 F.Supp. at 112–13. It is for this reason that "[e]arlier awards are instructive rather than binding." *Nivar*, 2016 WL 3647957, at *3.

more harm than emotional distress alone.[4]  In *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 194–95 (N.D.N.Y. 2019), for example, the higher award was designed to compensate the plaintiff for emotional distress *and* extensive physical injuries that resulted from a severe beating during which he suffered a nasal fracture, laceration of one eye, a concussion, and a left arm contusion. Similarly, the *Levans* plaintiff was awarded damages for "categories beyond plaintiff's emotional distress, including the physical discomfort he experienced while in custody and his subjective experience of a tarred reputation."  *Levans v. Delta Airlines, Inc.*, No. 12 Civ. 0773, 2016 WL 9447211, at *10 (E.D.N.Y. Aug. 1, 2016), *aff'd sub nom. Levans v. Delta Air Lines, Inc.*, 691 F. App'x 678 (2d Cir. 2017); *see also Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655 (2d Cir. 2015) (plaintiff's damages went beyond emotional distress and included a significant impairment in his ability to attend college and enter the workforce);[5] *Genovese v. Cnty. of Suffolk*, 128 F. Supp. 3d 661, 680 (E.D.N.Y. 2015) (plaintiff's award incorporated damages for her imprisonment and certain economic damages, in addition to emotional distress).  An independent review of the case law shows that Plaintiff's award is comparable to the size of awards granted in cases involving very similar claims. *See e.g., Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 47 (2d Cir. 2012) ($25,200 award on New York battery claim where defendant-employer "direct[ed] sexually offensive comments" at employee, "proposition[ed] her, touch[ed] her sexually and sexually assault[ed] her" over a two-year period); *Silipo v. Wiley*, 138 A.D.3d 1178, 1182–83 (3d Dep't 2016) (award of $64,000 in compensatory damages on employee's battery claim against employer

---

[4] This Court agrees with Plaintiff that a claim's label (sexual harassment versus battery) is not dispositive as long as the purported comparator cases involve similar injuries stemming from similar conduct. Plaintiff's cited cases, however, are similar in neither regard.

[5] Plaintiff's argument that she has not been able to secure employment after her termination from MSKCC and SKI is belied by the evidence at trial, which showed that Plaintiff later obtained employment at Long Island University but left due to an issue with her new supervisor.

for kissing employee despite her protests, grabbing her waist, and attempting to engage her in sexual relations did not deviate materially from what would be considered reasonable where employee experienced debilitating psychological symptoms for several months, and developed posttraumatic stress disorder and adjustment disorder with anxiety).

In short, the logic behind the jury's decision in this case may not be transparent. That does not mean, however, that it is unreasonable. As discussed above, given that there exist several plausible and rational explanations for the verdict reached by the jury, it cannot be said that the award is "inadequate." Accordingly, Plaintiff's motion for a new trial on damages is denied.

## CONCLUSION

Plaintiff's motion for a new trial on the issue of compensatory damages, (ECF No. 233), is DENIED. The Clerk of Court is directed to close the motion accordingly and to enter judgment in this action.

Dated:  December 14, 2022
         New York, New York

SO ORDERED.

_GEORGE B. DANIELS_
GEORGE B. DANIELS
United States District Judge

9